UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10646-RGS

JOHN C. VOTTA, JR.

v.

BRIAN BURT

FINDINGS OF FACT, RULINGS OF LAW, AND ORDER
AFTER A JURY-WAIVED TRIAL

December 7, 2011

STEARNS, D.J.

This case arose out of a traffic stop of plaintiff John Votta by defendant Brian Burt, a Massachusetts Bay Transportation Authority (MBTA) Transit Police (MBTA Police) officer, on Interstate 93 in Medford, Massachusetts. An altercation between the two men ended in the deployment of pepper spray by Officer Burt and Votta's arrest. Votta eventually pled guilty in the state district court to various criminal charges and received a probationary sentence. Votta then brought this Complaint against Burt in federal district court, alleging violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and the parallel provisions of the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, § 11I. The case proceeded though the usual course of discovery after which, on September 27, 2011, the court denied

Burt's motion for summary judgment, holding that trialworthy issues existed as to whether Burt had probable cause to arrest Votta and whether he had used excessive force in doing so. A trial without jury was held on October 6, 2011. Votta represented himself (ably), while Burt was represented by counsel.

FINDINGS OF FACT

Based on the credible testimony and the exhibits, the court finds the following facts by a preponderance of the evidence.

1. John Votta is a 71-year-old resident of Bedford, Massachusetts. Votta is an engineer by training and the former owner of a used car business. At the time of the incident, Votta was retired, but still active in the automobile trade. Brian Burt is considerably younger, although he has over twelve years of experience as an officer with the MBTA Police.

2. On the morning of April 19, 2008, Votta was driving south on I-93 at a speed admittedly in excess of the posted 55 and 65 mile per hour speed limits.[1] Seeking to exit I-93 at Exit 32 (Route 60), Votta increased his speed, intending to move to the far left lane to pass the slower cars in front of him. Among the cars he passed was Burt's

---

[1] Votta claims that he never exceeded 75 miles per hour. Burt testified that he clocked Votta driving at 83 miles per hour. The difference is not material as both speeds are in excess of the posted limits.

Crown Victoria, which Votta recognized as a police vehicle.  As Votta swung right towards the exit, he saw Burt activate his flashing blue lights.  Votta pulled immediately into an area adjacent to the highway guard rail.

    3.  As Burt approached, Votta rolled down the window of his car.  Burt, who was en route to a detail, was wearing a blue uniform with a duty belt, badge, collar insignia, and shoulder patches.[2]  Burt asked Votta for his license and registration.  Votta asked, "For what?"  Burt replied, "For speeding."  Votta challenged Burt's right to make a motor vehicle stop on I-93, telling him that, "You are not a Medford cop or Massachusetts State Trooper.  You don't have the authority."[3]  Burt then threatened Votta with arrest.  When Votta attempted to put his vehicle in drive, Burt reached through the window and turned off the ignition.  Votta then pushed Burt away and

---

[2] Votta insists that Burt was not in uniform.  However, I credit Burt's testimony (corroborated by Trooper Barteaux) that he was wearing a regulation MBTA Police uniform.

[3] Burt testified that Votta then swore at him saying "Fuck off, you are not a real cop."  While Votta denies using a profanity, I find it probable (to the extent that it is material) that Votta did use an expletive in response to Burt's request.  Votta admitted at trial to having "a big mouth," and acknowledged having been convicted in 1998 for shoving a Registry of Motor Vehicles clerk in an argument over a motor vehicle citation, as well as, for having been convicted in 1995 (for littering) after tearing up and throwing to the ground a speeding ticket issued by a State Trooper.  Votta is also no stranger to litigation, having previously filed a number of pro se lawsuits in state and federal court, mostly involving motor vehicle related matters (Votta remembers "seven or eight"), among them a lawsuit against the MBTA Police for failing to routinely videotape traffic stops.

attempted to restart the engine, intending to roll up the window. When Votta opened his cell phone to make a call, Burt warned him, "Don't do that." Burt then reached back into the car. A struggle over possession of the keys ensued during which Burt's left hand was bruised. Burt stepped back and drew a cannister of pepper spray from his belt. When Votta did not comply with a second command to produce his license and registration, Burt sprayed him with pepper gas.

4. Joseph Barteaux, a passing Massachusetts State Trooper, responded to a wave for assistance from Burt. He observed Votta to be visibly suffering from the effects of the pepper spray. He assisted Burt in removing Votta, who was resisting, from his vehicle.[4]

5. Votta was placed in an arriving transit wagon and transported to MBTA Police Headquarters in Roxbury. There he was permitted to wash out his eyes and, after he complained of a hurting shoulder and hypertension, was taken to Boston Medical Center to be examined. At around 6 p.m., Votta was released on a $5,000 bail bond posted by his son-in-law.[5] On May 27, 2009, Votta, acting on the advice of

---

[4] Barteaux and Burt do not portray a violent struggle. I find it more probable that Votta's resistance was a reaction to the shock of being sprayed with pepper gas than an indication of a desire to fight with the two considerably younger and armed police officers.

[5] Burt was not present at any of the events subsequent to Votta's being transported from the scene, other than the May 27, 2009 plea hearing in Somerville

his counsel, pled guilty in the Somerville District Court to assault and battery on a police officer, assault and battery with a dangerous weapon (the car keys), speeding, and resisting arrest. He was given a probationary sentence by Justice Maurice Flynn.[6]

## RULINGS OF LAW

1. The jurisdictional authority of the MBTA Police extends to all cities and towns that are within the MBTA's service area. *See* Mass. Gen. Laws ch. 161A, § 1; *Commonwealth v. Mottola*, 10 Mass. App. Ct. 775, 780 n.6 (1980), citing *Massachusetts Bay Transp. Auth. v. Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 540 (1965).

2. MBTA Police officers have "full police powers" within their territorial limits. MBTA Transit Police Dept. Manual ch. 1, 2.0 (Dkt # 45); *see also Commonwealth v. Bumstead*, 76 Mass. App. Ct. 1103, at *2 n.8 (2009) ("St.1968, c. 664, [the MBTA Police's enabling statute] confers the powers of both [Mass. Gen. Laws ch.] 41, § 98 (police officers of cities and towns) and [Mass. Gen. Laws ch.] 159, § 93 (police

---

District Court. Votta conceded at trial that there is no evidence that Burt had any hand in setting the amount of the bail.

[6] On January 28, 2010, Justice Flynn denied a motion by Votta to withdraw his guilty plea, but did agree to reduce the assault and battery with a dangerous weapon charge (a felony), to misdemeanor assault and battery.

officers of railroads, street railways, and steamboats)" on MBTA Police officers.).[7]

3. According to the MBTA Police policies that were in place in 2008, "all MBTA Police Officers will be trained in traffic laws and regulations and will be expected to take enforcement action, in accordance with this chapter, whenever a violation is observed that endangers the public safety (both on and off MBTA property), impairs or endangers MBTA operations, or results in a traffic accident." MBTA Police Manual at ch. 211, 1.0.  The Manual explains that some violations "involve an immediate public safety risk.  These high priority violations require that the Police Officer take some action." *Id.* at 4.0.  One such high priority violation is a speeding vehicle on a public roadway. *Id.*  Among the permitted enforcement actions is arrest, when such arrest is "warranted and authorized by statute." *Id.* at 4.1.4.[8]

4. Burt was within the territorial jurisdiction of his appointment as an MBTA Transit Police officer when he stopped, and subsequently arrested, Votta on a public way adjoining Medford, a city within the MBTA's service area.

---

[7] *But see id.* at *2 (noting that "[t]he extent of an MBTA officer's jurisdiction remains shrouded in uncertainty.").

[8] The MBTA Police Manual explains that if an officer is presented with a situation where a driver's license has been suspended or revoked the officer should make a custodial arrest if the officer believes that the driver will not appear in court as required after receiving a citation. *Id.* at 5.1.  Presumably, this directive applies with equal force when a driver refuses to produce any license at all.

5. It is settled law in the Commonwealth that "[w]here the police have observed a traffic violation, they are warranted in stopping a vehicle." *See Commonwealth v. Bacon*, 381 Mass. 642, 644 (1980); s*ee also Commonwealth v. Figueroa*, 18 Mass. App. Ct. 967, 967 (1984). If a vehicle stop is valid, an officer has the right to demand that the driver produce his license and registration. *Commonwealth v. King,* 389 Mass. 233, 244 & n.15 (1983); *see also United States v. Fernandez*, 600 F.3d 56, 62 (1st Cir. 2010). If a driver fails to demonstrate that he has a valid license, he is subject to arrest. *See* Mass. Gen. Laws ch. 90, §§ 10 & 21.

6. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Any force used must, however, be reasonable under the circumstances. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

7. From the moment Burt approached the vehicle, Votta was hostile and uncooperative. Instead of complying with Burt's lawful request to show his license and registration, Votta first tried to drive away. When Burt succeeded in turning off the ignition of Votta's car, Votta physically struggled with Burt over possession of the keys, causing an injury to Burt's hand. It was reasonable for Burt to believe that Votta

was attempting to evade arrest and that if successful, he might prove dangerous to Burt or to the public. *Cf. Commonwealth v. Lantigua*, 38 Mass. App. Ct. 526, 528 (1995) ("Inability to produce a license or a registration reasonably gives rise to a suspicion of other offenses such as automobile theft, and justifies heightened precautions for the officers' own safety.").

8. Although the initial cause for the stop – speeding – was not an inherently violent offense, Votta's behavior during the traffic stop had progressively become more aggressive and unpredictable. Burt's use of the pepper spray to subdue Votta after his further refusal to produce a driver's license was reasonable under the circumstances. *Graham*, 490 U.S. at 396-397 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.").[9]

## ORDER

---

[9] Burt also raised a qualified immunity defense to the use of force, which given the court's findings, is moot, and, in any event, is of doubtful viability. *Cf. Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004) (per curiam).

For the foregoing reasons, the court finds in favor of defendant Burt on Votta's Fourth Amendment claims.[10]  The Clerk will enter a judgment <u>DISMISSING</u> the Complaint and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[10] Because in the context of a motor vehicle stop and demand for production of a license and registration, as well as the use of force to make an arrest, art. 14 of the Massachusetts Declaration of Rights confers no more protection than the Fourth Amendment, Votta's parallel claims under the MCRA also fail. *See respectively Commonwealth v. Evans*, 436 Mass. 369, 375 (2002) & *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 400-401, 404-405 (2002).